The Honorable Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Morning. All right, Mr. Brignac, I hear you in the McLaughlin case. Thank you, Your Honor. May it please the Court, Eric Brignac for Tineka McLaughlin. First question before the Court, obviously, is whether Ms. McLaughlin waived her right to this appeal. She did not. The plea agreement to which she and the government agreed expressly reserved her right to appeal a sentence in excess of the advisory guideline range established at sentencing. Mr. Brignac, were you the lawyer at the trial? No, sir. Okay. What's your position with respect to your co-counsel's silence with respect to the judge's interpretation of the agreement at trial? The judge said, recited the interpretation that is consistent with the government's view of this appeal waiver, and your co-counsel remained silent and said nothing. Your Honor, my response to that is twofold. First, the plea agreement language, the government at that Rule 11, counsel for the government, read the language that I just quoted into the record. And that is the language of the agreement that the party signed. So I think that would trump any summary that the district court made. And my other response is that basically the district court, in summarizing that language, just didn't get it quite right. Certainly the way the district court presented it, he did say, you know, an appeal, you reserve the right only to appeal from a variance. And our interpretation of that is to the extent that conflicts with the plain language of the four corners of the plea agreement, which was both in writing and read into the record right before the district court said that, the plain language of that plea agreement has to control. So your view is that the defense lawyer is nothing more than a potted plant in that type of a proceeding? To the extent the defense – no. The defense lawyer, to the extent that it would have been more advisable for either party to perhaps tell the judge that's not exactly what the language is, it certainly would have been appropriate. I don't understand what you mean by either party. The government's view of the language was consistent with the district court's view. It's only that your client now that has a different view of things on appeal. You know, the defense lawyer, it would have been more advisable for her to raise that. Well, that's an understatement, but I think it's even more than that. I think that it seems to me the defense lawyer has an obligation to speak up. And yes, and I will agree, Your Honor, with that, but I would also say to the extent her failure to speak there, let the district court's words remain on the record, it's still in conflict, in contrast, with the plain language of the plea agreement. And that plain language – If it's really just so plain, doesn't that make it all the more incumbent on counsel to speak up? Yes, Your Honor. I'm not sure it's so plain, but I mean, if that's your view. Our position is that the language is plain. At a minimum, the language would be ambiguous, which would still need to be, of course, interpreted against the United States as the party that drafted the plea agreement. The defense counsel certainly, as this Court's pointing out, could have done a lot more to help the district court clarify that. How can the language be plain if the two of you have different views as to what it means? Well, Your Honor, it can be plain, even though we have different views, inasmuch as that comes before courts all the time, where two parties to a contract will dispute, but it's still up to the court. But this Court's obviously indicating that it feels the language is susceptible to the government's interpretation. And that being the case, it is still, at a minimum, ambiguous. And that ambiguity must be construed against the United States. Why is it necessarily ambiguous? If you read the agreement as a whole, just in its entirety, what it seems to be saying is that you can appeal an upward departure from the guidelines range, but you can't appeal an issue used in calculating the guidelines range. And so you do reserve a right to appeal an upward departure, but not an issue leading to the calculation of the range itself. That reading takes the provision as a whole and gives some meaning to each part of the provision and doesn't render part of the provision surplusage. And, Your Honor, I respectfully disagree with your reading. The phrase, including any issue that relates to the establishment of the guideline range, if this were in a statute, I would agree with Your Honor that there would be an indication that could not be surplusage that would have to be given meaning. This isn't a statute. This is a plea agreement designed in part to be comprehensible and understood by a layperson. All right, but, okay, what's so complicated about this? It's an appeal of any issue that relates to the establishment of an advisory guidelines range. The appeal of the 3B1 leadership enhancement is an issue that relates to the establishment of a guidelines range. And you say, well, we can't look at this in the way we look at a statute. But, on the other hand, your client is represented by counsel. And, Your Honor. I mean, what's odd is that this is just in the, seems to me, the exact reverse of what the, this appeal seems to me the exact reverse of what the provision contemplates. In other words, you could have taken an appeal on the 4A1.3 departure, and the plea agreement reserves that for you. But you can't take an appeal on the 3B1 issue because that didn't involve a departure. It involved an establishment of the range. And so when I read this agreement and I said, okay, they're going to appeal the 4A1.3 departure because that's what's allowed. And then all of a sudden I find, no, it's exactly the reverse. That issue is not being appealed. And something that seems prohibited is being appealed. So how does it, I mean, how do you just completely flip it and forego an appeal on what you have a right to appeal and appeal something that seems to be, to take the language here, an issue that relates to the establishment of an advisory guidelines range? And, Your Honor, the reason that we appealed that issue is I believe it is properly preserved. Our argument about the appeal waiver. It's not just not preserved, is it? Because my colleague, Judge Diaz, pointed out it wasn't raised. Reserving, I agree, our argument relies solely on this reservation clause. Reserving only the right to appeal from a sentence in excess of the guideline. You have to read part of it. You have to read the whole thing. Yes. You read the reservation clause, but that's one part of the total provision. And, Your Honor, I am saying our argument. You have to read the whole thing. Yes. And when you read the entire phrase, the entire sentence in context, that reservation clause trumps, for lack of a better word, is superior to the clause Your Honor is relying on. No, the specific trumps the general. And you know that to be the case. And the specific comment relating to your issue is that relating to an issue used to establish the guidelines range. That speaks more specifically to the issue before the court today. And we know that in statutes and in other things, when you have a very general expression, you have a very specific expression addressing a particular thing. The specific provides. Well, Your Honor, first I would say that the question of the guideline range and whether the sentence is in excess is no more specific or general than the computation of that range. But, again, our argument, as we said in our brief, relies heavily on the fact that that phrase says including. So, first, we waive our right to appeal, including issues that relate to the guideline range. And then taking that entire phrase, we then reserve our right, however, the parties agree we reserve our right to appeal a sentence in excess of the guideline range. Not reserve the right to appeal said upward departure or variance, but reserve the right to appeal the sentence. But, you know, it's a bit of an odd result because the only, under your view, the only reason why your client is allowed to appeal this sentence is because the judge elected to depart had he chosen not to. And, nevertheless, in your view, erred with respect to the calculation of the sentencing guidelines. I think you can see that there would be no appeal. Is that right? Yes. If the district judge had not imposed the upward departure in this case, then this. So, really, it's the upward departure that's the bone of contention, and the agreement allows you to appeal that. And, Your Honor, two responses. From the perspective of a criminal defendant who's working with their counsel, who's making this decision, do we go to trial, do we challenge this, what is the plea agreement on the table? The primary question for that criminal defendant is the length of the sentence she's going to receive. And she and her counsel are going to compute a guideline range. It may not be what the court imposes, but it will be a very good guess with experienced counsel. And this helps protect the defendant. This tells the defendant, okay, your range is likely to be X to Y, but if you end up with a sentence above that, because, you know, the court can go above it, then we do have the right to appeal. So from the criminal defendant's perspective, she's not concerned. She's in jail for 27 months. She's not concerned, in all honesty, herself, with how exactly the court got there. That's for us to decide. She knew going in what her expected sentence was likely to be. She got a sentence higher than that, and she sincerely and honestly believed that she reserved her right to appeal that sentence. So that's why, Your Honor, even though from a lawyer's perspective, from this court's perspective, it may seem like we're going to sort of micromanage this and focus on the issue. Well, yeah, if she sincerely believed that, then I assume her lawyer sincerely believed that. And if that was the case, then why play hide-the-ball with the district court judge? And, Your Honor, I do not want to speak for her. I will say, again, as I told this court, it would have certainly been much better for her at that point to raise the issue and to clarify the issue. And then certainly there may have been a discussion on that. But, you know, she did not. Well, I suppose the other suggestion one might, the conclusion one might come to is that the defense lawyer was trying to game the system and remain quiet in the hopes of preserving an issue for appeal. Your Honor, I sincerely and honestly doubt that. It is always better to resolve these issues in the district court. We do not want to be up here on plain error. We do not want to be up here with the potential of having waived an issue. I agree with you. That's exactly why I'm asking the question is why, and I understand that you weren't there and you're not in a position to speak for your colleague, but it troubles me that we're dealing with this issue now when the district judge made it very clear to this defendant what his rights or her rights of appeal were to be, and there was nothing but crickets chirping in the courtroom in response. And, Your Honor, I understand that that troubles you. I certainly wish I was not up here in that procedural posture. I will say, though, if we say she should have raised that objection, then we would be up here on plain error, and I would still say when you look at it, you know, we say that the language of the plea agreement is either plain in our favor or ambiguous, and the law there is settled. If this plea agreement is ambiguous, it still must be interpreted in favor of the defendant. So even under a plain error standard. The problem I have is you have to read this agreement and this provision as a whole, and when so much of the discussion and your brief and everything just seeks to isolate the clause from the reservation clause from the waiver clause, and you have to read the reservation clause and the waiver clause in tandem. They're part of the same sentence, and you can't fasten it any more than the government could try to fasten on the waiver clause to somehow. I mean, I can construct an argument that allows, that doesn't allow a sentence of an upward departure when you're simultaneously doing appealing establishment of the advisory guidelines range, but the point is whether you're looking at it from your side or from the government's side, these provisions have to be read in party material. You can't just pick out one clause and put all the weight on that. It's not the way the thing is written. And I agree, Your Honor, and the government wants to pull out that including any issues clause and have it all rest on that. But that's my problem is the government wants to pull out one strand, you want to pull out one strand, but when you read it as a whole and not have the government strand and your strand, when you read it as a whole, there's a nice division of labor, and read as a whole, it makes sense. You can't appeal issues relating to the establishment of the range, but you can appeal upward departures from the range. And lo and behold, we have, as I say, exactly the reverse. We are appealing an issue relating to the establishment of the range, and we're not appealing the upward departure. What about the upward departure? Why was that not appealed? Was the criminal history really not sufficiently taken account of, such that the district court had to resort to 4A1.3? I would have thought that that would have been an issue. In every 4A1.3 departure, it's open to a challenge on the grounds that the district court way overestimated the criminal history and that it didn't afford a proper basis for a 4A1.3 departure. But there's no mention of that, and it just seems the whole appeal seems flipped on its head. Well, Your Honor, writing this appeal, I believe, I still do believe, that we had the right. The district court's significant error, the primary error the district court made, was in applying the leadership enhancement. And, Your Honor, the district court did apply the criminal history upward departure, which we all agree was not waived by the appeal waiver. But on doing that, he went up to a criminal history, he went up two criminal history categories based on a significant number of unscored convictions that were similar in kind to the criminal conduct in this case. So why was it not appealed? Because, honestly, Your Honor, having read this court's precedents, that seemed within the district court's discretion, that the upward departure was within his discretion and was not legally erroneous. The issue we appealed was, in my view, as explained in the brief, legally erroneous and not supported by the facts. I see my time is up. Stephanie, do you have any questions? No. Thank you. Mr. Rubin. Good morning. May it please the Court. Phil Rubin on behalf of the United States. I'd like to get right into this on the two main problems we see, both of which were highlighted by the Court's discussion this morning with defendants' reading of this plea agreement. The first is that it ignores the context. And what we asked the Court to do, as Judge Wilkinson, you've mentioned several times this morning, is read the waiver as one whole unit. Not any one clause, not even the including any issues clause, but the entire agreement. And the second thing is that it leads to illogical results. And this was also something the Court has pointed out this morning, that it allows a defendant to appeal, due to an upward departure, to appeal something that has absolutely nothing to do with the upward departure. Indeed, we pointed this out in our brief, you'd have a scenario where if you had two defendants with the exact same plea agreement, with the exact same criminal conduct, they got the exact same enhancement, but the one has a different criminal history and gets an upward departure, that one can appeal under this waiver and the other one couldn't under the defendant's reading. It just doesn't seem to make sense. What makes sense is the reading that this Court has already applied to this exact language in the United States v. Chiwaka, which was an unpublished decision, but I think a very useful one. And one thing from that decision that I would draw to the Court's attention is that both that case and this one involved the District Court asking the defendant at the Rule 11 hearing whether she understood that she was waiving the right to appeal except for an upward departure. And in both cases, the defendant said yes, and no comment from defense counsel or anything like that. The Court found that important in the Chiwaka decision, and we think it's very important here. And I would just say this was not a misstatement by the District Judge. It was actually the same District Judge in this case and in Chiwaka read the exact same question to both defendants five years ago. Well, I guess you can also say it was the same U.S. Attorney's Office that should have been put on notice that there might be a problem with this language, given Judge Shedd's dissent. We recognize, Your Honor, that Judge Shedd dissented, but I think we took comfort from the majority's decision in it, which didn't seem to have much trouble finding that the language clearly stated what we had always thought it stated. And I will say that we're reluctant to change plea agreement language when we have had this Court interpret it the way that we think it should be read because we don't know what unintended consequences we might introduce by changing it. And so I think we didn't receive any indication from the Court in the Chiwaka decision that we should be anyway revisiting the language of it, and so I don't think there was any discussion to revisit it. And that's because we think that language is clear. We think that language, when read as a whole, makes very clear that you reserve the right only to appeal the decision to sentence above the guideline range, whether that's a variance or whether that's a departure, whatever the case may be. And the way to read this as a whole, we think, is to start with it is a total waiver. It starts out saying you waive knowingly and expressly all rights to appeal conviction in whatever sentence is imposed on any ground. It then goes further to make absolutely clear, unequivocally, that that includes the calculation of the guideline range. Okay, now, what you just said was all that we went over in our discussion with Mr. Brignac. Do you have anything? I want to ask my colleagues if they have any questions. Do you have anything further you wish to add that the Court overlooked? I don't think there's anything significant, Your Honor. I would just, and to sum up very quickly, and I don't want to belabor any of this, this is the reading that we offer that reads the whole agreement in context. It is the only one that has the reservation of rights clause correspond to its reason for existing. It's the only one that's consistent with this Court's prior interpretation, and it's the only one that fits with the defendant's own understanding of the Rule 11 hearing. And so we think that's the right interpretation. Okay, I'll give any questions then. Thank you, sir. Thank you. And, therefore, we ask that you dismiss. Thank you. Mr. Brignac, we'd be happy to hear from you and Roboto. Thank you, Your Honors. You know, obviously it's summarized, it's explained in our brief, our reading of that language. It still accords with my office's, you know, understanding, I think Ms. McLaughlin's understanding. Certainly, as Your Honors pointed out, it could have been, should have been raised at the Rule 11. There would have been clarification at that point. It wasn't. I would still say the plain language of that plea agreement trumps the district court's summary at the Rule 11. And to the extent that it is on plain error that the language is still ambiguous and under the plain precedent that ambiguous language be interpreted in the defendant's favor, that this court reach the merits of the appeal. Thank you, Mr. Brignac. Thank you. We're going to come down and greet counsel. We'll move directly into our next case.
judges: J. Harvie Wilkinson III, Albert Diaz, Stephanie D. Thacker